### 9084

### ALDRACH v. SO. CA. LIGHT, POWER & RWYS. CO.

(85 S. E. 164.)

CONTRACTS. PERFORMANCE. BREACH. PAYMENT. TENDER.

1. PAYMENT—TENDER.—A cheque not being tender, is not payment, unless so accepted.

2. CONTRACTS—PERFORMANCE.—The failure of a public service corporation to furnish lights pursuant to a contract, predicated upon payment of consideration in advance, is not actionable, in absence of such payment or tender.

Before SEASE, J., Spartanburg, May, 1914.   Reversed.

Action by W. F. Aldrach against South Carolina Light, Power & Railways Company.   From judgment for plaintiff, defendant appeals.   The facts are stated in the opinion

FOOTNOTE.—As to right of public service corporation, other than railroads, to require payment of charges in advance, see note in Ann Cas. 1914d, p. 119; as to their right to impose penalty or added amount for failure to pay service bills promptly, see note in 43 L. R. A. (N. S.) 63.

*Messrs. Sanders & DePass,* for appellant, submit: *Company had right to cut off lights on failure of plaintiff to pay amount due:* 81 S. C. 447; 88 S. C. 354.   *Tender not valid:* 15 Rich. 318; 3 Strob. 25; 38 Cyc. 148, 151.   *Punitive damages not recoverable:* 69 S. C. 444; 77 S. C. 192; 91 S. C. 417; 96 S. C. 240.

*Messrs. Gwynn & Hannon,* for respondent, submit: *As to duties of public service corporation:* Civil Code, sec. 3326. *Action ex delicto:* 70 S. C. 117; 38 Cyc. 428; 69 S. C. 434. *Compensatory damages recoverable for wilful tort:* 71 S. C. 104; 75 S. C. 301; 78 S. C. 421; 88 S. C. 427.

April 30, 1915.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action by the plaintiff against the defendant for damages.   The plaintiff was the proprietor of a picture show operating in the city of Spartanburg.   The undisputed testimony is as follows: The defendant agreed to furnish the light at a "flat rate," payable weekly, in advance. There was evidence of an agreement to put in a meter, but the meter was not installed and there is no evidence of a new contract for deferred payment.   The first and second week the plaintiff paid the charges.   On the third week, the last week, the plaintiff delayed payment.   On Saturday, the last day of the last week, the defendant made several attempts to collect the amount due.   In the afternoon of Saturday, Mr. Walker, an agent of the defendant, met the plaintiff and the plaintiff gave him a check on a bank in Charlotte, N. C., for the amount due.   This check was carried by Mr. Walker to the office of the defendant.   The defendant refused to accept the check.   The plaintiff says "about half or three-quarters of an hour this man and a lineman came back and said that Mr. Aiken (defendant's agent) refused to accept the check and that I would have to pay him in cash.   I told

him I could not pay in cash and he motioned to the lineman and he went up the pole and cut off the light." Again, "I offered Walker, when he came back, to get him the money or a good endorser. He motioned to the lineman to cut off."

There was evidence that the plaintiff then applied to Mr. Aiken to restore the connection, but this was refused and the plaintiff brought this suit for failure to furnish the light according to the contract.

The plaintiff recovered judgment for fifty dollars in the magistrate's Court, which was affirmed in the Court of Common Pleas. The defendant appeals to this Court on several exceptions. Only one question need be considered.

Is there any evidence that the defendant violated its contract? We see no evidence of it.

The plaintiff said the original contract was for ten dollars per week. As to the time of payment he is silent. The defendant's witness testified twice that the payments were to be made in advance. The plaintiff went back on the stand, but did not deny that the payments were to be made in advance. It is true the record shows that during the second week there were two payments and they were not in advance, but there is no word of testimony to show that the time of payment was changed by agreement. On the third week indulgence was given until the last day of the last week and the latter part of that day. It is also true that the charge per week was changed from ten to seven dollars. There was evidence that the defendant agreed to put in a meter. About this there was dispute. It is not clear that the failure to put in the meter played any part in the case. The defendant demanded seven dollars and the plaintiff gave him check for seven dollars. The defendant refused the check. The check is not payment (unless so received). It is not tender. The plaintiff did not rely upon it as either, for he attempted to prove a real tender. In this he failed.

He says, "at that time I had the money." Where? In his room, in his pocket or in his hand? Again, "at the time I offered the money, I was in a position to pay the money." This is no clearer than the other. Plaintiff is not required to use the word "tender" but he is bound to prove the facts from which tender may be inferred. If the plaintiff had said to Mr. Aiken "if you will connect up the wires again, I will pay you the seven dollars," the statement of an offer would have been true, but it would not have been payment or tender. The plaintiff must prove his right to the lights and the defendant has deprived him of that right. This the plaintiff failed to do and the judgment is reversed.

MESSRS. JUSTICES HYDRICK, WATTS and GAGE concur in the opinion of the Court.

MR. CHIEF JUSTICE GARY, *dissenting.* This action was commenced in a magistrate's Court, and is for the recovery of damages alleged to have been sustained by the plaintiff, through the wrongful acts of the defendant, in refusing to furnish lights to operate a picture show. The jury rendered a verdict in favor of the plaintiff for fifty dollars, which, on appeal to the Circuit Court, was affirmed.

The first ground upon which Mr. Justice Fraser, who delivered the leading opinion, reverses the judgment is, that the *undisputed* testimony shows, that the defendant agreed to furnish light at a "flat rate," payable *in advance.* The testimony tends to show that the question, whether the payments were to be made *in advance* was in dispute.

In his return the magistrate stated that "the issue in the case was an issue of fact," and that he saw no reason to disturb the verdict. Furthermore, the testimony shows that the question, whether the plaintiff agreed to pay the defendant in advance, was in dispute. W. B. Aiken, a witness and agent for the defendant, testified that "he (the plaintiff) paid a part of the week in advance;" also "he (the plaintiff)

was extended credit for part of the week." One of the receipts was dated the 17th of July, 1913, and the other on the 26th of July, 1913, but was only for five dollars, and was given more than a week after the first receipt. The reasonable inference from these facts is that the weekly payments were not to be made *in advance*.

The second ground assigned by Mr. Justice Fraser is that there was some negotiation for a meter, but the meter was not installed and there is no evidence of a new contract." Again, the record shows that he was in error.

The plaintiff testified: "Mr. Aiken agreed to put in a meter. As the rate was too high they were charging me, I had a box fixed for protecting the meter, and he kept promising me that the meter would be put in. For the second week I paid him five dollars, I expected the meter to be put in on Wednesday. He did not put in the meter and on Saturday I paid him for the last three days. The third week he continued to promise. On Saturday I paid him. He said that because he had not put in the meter, he would make a reduction. I was then told that Mr. Aiken had agreed to take seven dollars. I gave him a check upon the Charlotte National Bank, in which I had the funds and he went away."

The foregoing testimony is corroborated by the statement of J. B. Walker, an agent and witness for the defendant, who testified that the bill which he presented at the end of the third week was for seven dollars. The defendant did not deny that it failed to install the meter.

Under the circumstances the issues were properly submitted to the jury as no questions of law were involved. Furthermore, section 407 of the Code of Civil Procedure provides, that "upon hearing the appeal (from an inferior Court) the appellate Court shall give judgment according to the justice of the case, without regard to technical errors and defects, which do not affect the merits," which seems to have been done in this case.

For these reasons, I dissent.